(Judge Hale of the eighth circuit taking the place of Judge King.)

## C. C. C. & St. L. Ry. Co. v. McKelvey et al.

1. ALLOWING A REPLY TO BE FILED AFTER THE TESTIMONY WAS SUBSTANTIALLY CLOSED.

   It is not a reversible error to allow a reply to be filed by a defendant after the testimony is substantially closed, or where plaintiff was introducing testimony in rebuttal, where the case was tried precisely as it would have been tried had a reply been filed before the trial commenced, but which was in fact tried in ignorance, on both sides, of the omission to file such reply.

2. EVIDENCE SHOWING DIFFERENT KINDS OF SPARK ARRESTERS.

   In an action against a railroad company for setting fire through defective or insufficient spark arresters on its engine, it is incompetent to charge such company with negligence by allowing evidence to be given which shows that another company used a different appliance; but evidence of expert witnesses showing different kinds of netting used by different railroads to guard against the emission of sparks, is competent.

3. COMPETENCY OF EVIDENCE REGARDING THE MARKET VALUE OF DESTROYED PROPERTY.

   Questions only leading up to show that property which has been destroyed had a market value are competent, as well as questions which show that the property had a market value.

5 C. C. 36

4. PROOF OF ACTUAL VALUE.

It is competent to show, as bearing upon the actual value of property destroyed, what its actual value was as a whole before and after its destruction.

5. MEASURE OF DAMAGES.

The measure of damages in cases where the property of one has been unintentionally destroyed by the negligence of another is the actual value of the property, and not what it would have cost to reconstruct or replace the same, allowing deductions for wear and tear; and where property totally destroyed has a market value, that market value is the measure of compensation for the loss.

6. ADMISSIBILITY OF SPARKS.

Where it is clearly established that certain sparks which have been picked up along the track of the railroad company came from the engine of such company, then such sparks are competent and may be admitted in evidence.

ERROR to the Court of Common Pleas of Erie county.

HALE, J.

This is a proceeding in this court whereby the reversal of the judgment of the court of common pleas is sought. The plaintiff in error was the defendant below, and the defendants in error were plaintiffs below. I shall use the terms plaintiff and defendants as they appear in the petition in error. The defendants, McKelvey & Co., were the owners of premises situated within the city of Sandusky, or immediately upon its borders, upon which were erected two blocks of ice-houses, one block of five and the other of six. Those ice-houses on the 15th day of July, 1891, were destroyed by fire. The plaintiff, the railroad company, owned and operated a railroad at that time adjoining the premises upon which the ice-houses were located. The defendants, McKelvey & Co., claim that the railway company is responsible for the destruction of those buildings ; that the fire originated through the negligence of the railway company, and the negligence alleged is, that on and prior to the day these buildings were destroyed, the company had in use an engine which was out of repair, not provided with a proper spark arrester, and it negligently used the engine in the vicinity of these houses, from which sparks were emitted lodging in the cracks of the building and causing the fire. The particular defects that were claimed in the spark arrester were that the mesh of the netting used was too large, that it was not properly attached to the engine, and was otherwise out of repair. The negligence alleged by the defendants was denied by the plaintiff, and the further allegation was made by the plaintiff in error, that the defendants were guilty of contributory negligence in the care of their buildings and the manner in which they were left, and in failing to make any provisions to guard against loss by fire, being in the situation they were.

The case was tried at the April term, 1894, of the court of common pleas before the court and jury, resulting in a verdict for the defendants in the sum of $14,777.40. A motion for a new trial was interposed, which was overruled, and judgment entered upon the verdict. During the progress of the trial a large number of exceptions were taken to the introduction of testimony, the charge of the court, and the refusal to charge as requested.

The first error complained of is, that the court permitted the defendants, after the testimony was substantially closed, or while the plaintiff below was introducing testimony in rebuttal, to file a reply.

It seems that it was then discovered that the allegation of contributory negligence made by the answer had not been denied by a reply.

Of course, if the case were to be reversed, that error would be wholly immaterial, as it could not again occur.

And all I need to say is, we find as a fact from this record that the case was tried precisely as it would have been tried had a reply been filed before the trial was commenced, and apparently was tried in ignorance of the fact upon both sides that no reply had been filed; and we hold that there was no error in allowing the reply to be filed, or in refusing to withdraw a juror and continue the case by reason thereof.

The defendant, to maintain the issues upon their part, called as a witness Charles A. Cory, who is now connected with the Cincinnati, Hamilton and Dayton Railroad, and this question, against the objection of the plaintiff, was allowed to be put to the witness and answered:

"Q. Will you state whether this spark arrester here is a spark arrester of the kind that was in general use, with respect to its size, mesh, and different parts, during 1891, upon the roads here in Ohio? A. The general style and shape of the netting is such as is in general use, and was, in the year you refer to—1891. The mesh, or the opening in the wire, is a very little larger than we use on our road, or did use at that time; I have not measured that—I should judge it is what is termed in mechanics a possibly two by two or two and a half mesh. The mesh we use is what is known as a three by three mesh."

Counsel for the plaintiff then moved to exclude the answer. The court said:

"I think that part of that answer is incompetent, in that it makes the road that this gentleman is connected with the standard. I will let that stand, however."

The court, leaving the record there, would be very likely to be misunderstood. He did not mean, I suppose, to say, that standing alone as it was, it would be incompetent; but might be made competent by the introduction of further testimony, for he says further on, after some further objection:

"You may show that another spark arrester was in use, and then, if you can, that it was in general use.

"Q. Now state whether, from your experience with spark arresters and the methods of covering the cleaning holes in them, you can say that such an appliance as you have described is in use by the railroads of the United States?"

That question was objected to. The trouble is not with the question put, for it was intended to elicit from the witness whether this very spark arrester that was used upon this engine was in general use, but he answers:

"A. I can only speak in regard to that as to our own company—it is in use there."

That is the three by three. Then counsel for the plaintiff moves to strike out that answer, which was overruled.

This witness, an employee of another railroad, was permitted to state that the netting used on his road was different from that used upon this engine, without showing, and under the positive statement, that he was unable to state whether it was in general use.

The obligation of this company, imposed by statute, was to equip this engine with some appliance or contrivance that would effectually guard against the emission of fire and sparks which would otherwise be thrown out. The alleged negligence was the omission of this duty on the part of the company. Was this testimony competent to establish

that alleged negligence? After a careful review, we have come to the conclusion that it was not. We have no doubt it was entirely competent to aid the jury in the investigation by the testimony of expert witnesses covering the different kinds of netting that were used, to show the appliance with which each would guard against the emission of sparks, and educate the jury up to a point that they might say whether this particular appliance used upon this engine was the proper appliance or otherwise. But to charge one company with negligence by showing that another company used a different appliance, is a line of testimony that we think is wholly incompetent.

There were other questions put to this witness as to the mode in which this netting was attached and secured around the exhaust pipe, testimony eliciting his knowledge as to the effect of sparks and their vitality, the distance to which they could be carried and still start a fire. That testimony we are not disposed to say was incompetent. The witness had shown himself to be conversant with that class of business, and the subject was one upon which testimony might reasonably be used.

A witness, C. D. Wilder, a resident of Buffalo, and employed on one of the railroads terminating in Buffalo, was called and substantially the same questions were put to him as to the witness Cory, which I have been considering and need not be further considered. So far as they fall within the rule that I have announced, we hold them to be incompetent. A further question put to this witness was objectionable.

The spark arrester being present in the room, witness was asked to examine it and state to the jury whether that particular spark arrester was one that was most efficient in preventing the emission of sparks, or in substance that.

That was the exact question the jury were to pass upon, and we think the better way, at least, would have been to follow the course that I have just indicated, by getting all the knowledge the expert had upon the different kinds of netting that was used, the different classes of spark arresters, their efficiency, etc., and submit to the jury the question that was put to the witness to answer. We think it was error to pursue that course in the examination of this witness.

Another witness, J. B. Brown, a resident of Cleveland, was permitted to state to the jury, in answer to questions, that he had very recently before giving his testimony procured from the plaintiff's shops in Cleveland a specimen of wire netting used upon spark arresters. He was required to produce that to the jury for examination, and the jury was permitted to take it into the jury room in their deliberations, no proof being offered that this kind was used upon the engines of this railway company. The netting was procured some two or three years after this transaction, and we think that kind of testimony was well calculated to prejudice the jury in the consideration of the questions that were to be submitted to them, and hold that it was error on the part of the court to allow that testimony to go to the jury in the form and under the circumstances shown in the record.

I pass over now the question that is made upon the weight of the evidence. It is claimed by plaintiff that the court erred in overruling the motion for a new trial on the ground that the verdict was against the weight of the evidence. Passing that point, I come to the question of damages in the case. This question relating to the measure of damages involves an examination of the testimony that was permitted to go to the

ury bearing upon the subject; the charge of the court upon the subject, and the requests to charge, for the court, early in the trial of the case, was called upon to rule upon evidence that would indicate the measure of damages that was to be adopted in the case.

It was claimed on the part of the defendants in error that the rule of damages was the cost of reconstructing the building, deducting from that cost the depreciation of the old buildings by wear and tear at the time of their destruction. It is quite evident from this record that such claim was made, while on the part of the plaintiff in error it was claimed that the actual value of the buildings, the market value of the property destroyed, should govern. While the first witness was on the stand, Mr. McKelvey, questions were put to him with the purpose of eliciting from him the cost of the reconstruction of those buildings according to the plans and specifications upon which the old buildings were constructed, and then he was asked as to the time that the old buildings had stood, and their probable depreciation, with a view of taking from the cost of the new buildings the value of the depreciation of the old, and thus determine the loss. It is claimed on the part of the plaintiff, the railway company, that this testimony was incompetent. We do hold, however, that this testimony did not furnish the proper criterion for the assessment of damages, but that it was only competent as a circumstance in the case, to be considered by the jury in fixing the actual value of the property destroyed.

Bearing upon this question the builder who constructed those buildings was called as a witness to establish the same proposition, and, of course his testimony falls within the same rule. Two other witnesses were called who had no acquaintance with this building, but were builders, and their testimony was sought, as experts, to prove the value of the buildings. It was done in this way: Certain plans and specifications were shown to the witnesses, and they were asked the cost of the construction of the buildings according to those plans and specifications. It is contended on the part of the plaintiff that that testimony was incompetent, on the ground that those witnesses, having no actual knowledge of the property destroyed, could only be called upon to answer hypothetical questions, the basis of which should be the facts that had appeared in the case from other testimony, and could give no testimony based upon the plans.

We have not examined those plans with that degree of care and accuracy that would enable us to say just how far they went in the direction of embodying all the facts necessary for such an estimation. We are inclined to leave that testimony with saying, that if the plans and specifications embodied all the elements entering into the construction of the building, kind of building, kind of timber, mode of construction, quality of the timber, and has been put in evidence in the case, sworn to be correct, they might be made the foundation of an estimate of the value by expert witnesses acquainted with the business. In form it comes to this, that the hypothetical question is put to the witness, what would be the cost of a building constructed according to those plans and specifications, embodying the plans and specifications as a part of the question. That is the substance of it, and in that way we think it would be competent.

But dealing with this question further, a witness by the name of Upp, a resident, I believe, of Toledo, and for many years engaged in the ice business in this city, and until very recently the owner of that class

of property in this city, was called by the defendant and was questioned as to that class of property, the length of time it would stand, the depreciation, and various other facts that were supposed to bear upon the value of the property destroyed. On cross-examination he was asked after taking him over various other matters, and eliciting testimony tending to show that this property had a market value and might be thus estimated:

"Q. And ice houses were of the same market value—that is the market value was the same as the market value of other real estate, wasn't it?

"Mr. McKelvey: We object to that, for the reason that this is leading up to a question of market value."

The court sustained the objection, to which ruling an exception was taken.

"Q. Now, it is a fact, isn't it, that when you speak of market value of real estate you mean what it would bring in the market where there was a buyer and a seller?"

This question was objected to on the ground that it was leading up to the question of market value.

This plainly indicates the line that the defendant in error was standing upon—the proposition that the market value of this property described could not be shown, although it had a market value, and questions tending to show that it had a market value were excluded.

We think that questions not only leading up to showing that it had a market value, but questions showing it had a market value were entirely competent. The court said to counsel: "You may show that these ice houses, separate from the land, had a market value, if you can; but you may not show that the whole property had a market value before and after the fire." Whatever rule was applied finally, it was clearly competent to show, as bearing upon the actual value of the property destroyed, what its actual value was as a whole before and after the fire; and it was confining the testimony to too narrow a limit to exclude this kind of testimony because it was leading up to showing that this property had a market value.

Now, going to the charge of the court upon this question, and the requests made to charge by the plaintiff. Request 28 reads as follows:

"Request No. 28. The value of the property destroyed cannot be determined by what it would have cost to reconstruct the buildings and replace the property upon the same plans and dimensions, and with the same kind of materials and workmanship as before, and making a deduction from the cost of new structures and machinery, for the wear and tear and the depreciation of the old; but it you find for the plaintiffs, the amount of their recovery will be the actual value of the property, and not what it would have cost to reconstruct or replace the same, with deductions for wear and tear. Under such a rule the damages might far exceed the actual value of the property and the actual loss to plaintiffs. Where property totally destroyed has a market value, that market value is the measure of compensation for the loss."

The court refused to give that request, but did instruct the jury:

"The measure of damages in cases where the property of one has been destroyed unintentionally by the negligence of another, is just compensation in money for the property destroyed, and that is the full value of the property at the time and place of its destruction, and the interest on that amount from that date."

That is a clear and correct proposition, but he goes forward and gives the jury the rule by which they are to determine that value, and he says:

"In determining the value of the property, in case you find for the plaintiffs, the jury will consider all the facts in evidence as to the character, quality, situation and condition of the property, the uses to which it was devoted, and its adaptability to such uses, and all the evidence bearing upon the value of the property at the time of the fire.

"And you may arrive at that value by considering, in connection with all those facts, what it would have cost to reconstruct the buildings and replace the property upon the same plans and dimensions, and of the same kind and quality of material, workmanship, machinery and appliances as before, making a just deduction from the cost of new structures and machinery for the wear and tear and depreciation of the old. That would be a proper method by which to arrive at the value of the property.

"Of course, it would not be proper to allow these plaintiffs what it would cost to reconstruct new buildings, because new buildings might be worth a great deal more probably than the buildings which stood there. If you come at your measure of damages in that way, you should estimate the cost of new structures, and make a proper deduction from that cost for the depreciation and wear and tear of the old."

Now, we have no doubt that the jury would understand from that charge that they might take the testimony that had been given, to which I have referred, ascertain the cost of the buildings, ascertain the proper deduction to be made from the cost on account of the wear and tear of the old buildings, and arrive at their verdict in that way.

If that is so, we think the charge was erroneous.

This charge must then be taken as permitting the jury at least to ascertain the extent of the loss sustained by the defendants in error by determining the cost of reconstructing the buildings, deducting from the sum thus fixed such reasonable sum for depreciation in value by wear and tear of the buildings destroyed, as the jury should determine. Certainly, such a rule cannot be of universal application. It excludes, if not the use to which the building is adapted, the important consideration whether the business to which it is only adapted was profitable, or had become a failure and could only be continued at a loss. We all know that buildings adapted to one purpose and class of business lose much of their value when that business ceases. A plant constructed and equipped for the manufacture of certain machinery which has been superseded, although in the most perfect condition, would be worth but a small percentage of its cost. If the owner of such a plant would recover from one who has wrongfully caused its destruction, the cost of its reconstruction, he would realize from its destruction a much larger sum than he could have realized from any sale possible to have been made. A dwelling house of the most approved style of architecture and in the most perfect condition, might be worth far less than its cost, owing to its location or changes in its surroundings. There is no class of realty to which this rule can be safely applied. Again, the cost of reconstruction might be far less than the actual loss sustained; there might be interruption of a manufacturing business which would entail upon the owner of the building a loss which would not be fully compensated by the reconstruction of his plant.

In the case of McKelvey & Co. they were the owners of real estate

consisting of land and buildings. The buildings apart from the land had no value as buildings. They were not such as could be removed. The owners could not have sold them separate from the land, and we see no reason for insisting upon a separation for the purpose oᵗ ascertaining the loss sustained by their destruction. Before the destruction of the buildings, the value of this property was much greater as one property, buildings and land together, than the sum of any separate value that could be put upon the two. But a rule is applied after their destruction which makes the separate valuation much more profitable than the valuation as a whole. This result is reached by determining that the buildings had no market value separate from the land, and then permitting the jury to ascertain the cost of the buildings with deductions for their depreciation from use.

The rule adopted by the court below finds some support in cases from some of the states, noticeably Iowa, but the cases cited are not in their facts entirely like the case at bar, though, as I say, they give some support to the rule adopted. But that rule finds no support, so far as we can ascertain, in any of the decisions of our own state. In the appropriation of private property to a public use, the value of the property actually taken is ascertained. Then comes the question of the injury to the property not taken, adjacent. Now, the supreme court has held that a witness may not be asked how much less valuable property not taken is by reason of the appropriation, but the witness may speak of the value of the property before the appropriation, and its value afterwards, and allow the jury to ascertain the extent of damage.

In the case in 16 Ohio St., 573, the court says, in substance, the market value, if the property has a market value, must govern. If the property has not a market value, then the actual value must be ascertained of those who have knowledge of that actual value. So that we think there was error in the court both in allowing the introduction of testimony upon this subject and in the charge given to the jury upon the subject, and in the refusal to give to the jury request number 28.

The question as to the weight of the testimony we have considered to some extent, but in view of the fact that the case is to be remanded for a new trial and may be tried upon a different line of testimony somewhat, and in view of the fact that testimony went to the jury which we hold to be incompetent upon this trial, we do not pass upon that question. We leave that question and will be at liberty to consider it when it shall have been tried to a jury upon a proper basis and upon proper testimony.

In the question made here as to the ruling of the court upon the question of contributory negligence, we find no error. In short, I end this discussion by saying that in the respects not specifically designated we find no error in this record, excepting that we do not pass upon the question as to the weight of the evidence. The result is that the case will be reversed and remanded to the court of common pleas for further hearing.

Upon this question made in the record as to the competency of certain sparks that were alleged to have been picked up along the track of the railway company to be given in evidence, the court are not wholly in accord. We all agree if it was clearly established that the sparks picked up came from the engine, that it would be competent to make the use of them that was made, but we do not all think that the proof establishes clearly enough that those sparks did come from this engine. The

best thing we can do with this question is to let the plaintiff on a subsequent trial of the case take his chances in offering this testimony.

I said in the discussion of the case that the testimony permitted to go to the jury as to the cost of reconstructing the building together with the percentage of depreciation, was competent. This court is of the opinion that that testimony is, as I have said, barely competent, but is of that nature that it should be very carefully guarded by the court, lest an improper use be made of it by the jury.

Defendant in error excepts.

*Hon. John T. Dye*, *S. H. Holding* and *Geo. E. Reiter*, for Plaintiff.
*Phinney & Merrill* and *John J. McKelvey*, for Defendants.

---

## FEES AND COSTS.